UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ELENA DAWNE EVANS, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>*Acting Commissioner of Social Security,*[1] )<br>)<br>    *Defendant* ) | No. 2:12-cv-235-JAW |

### REPORT AND RECOMMENDED DECISION[2]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the residual functional capacity ("RFC") assigned to her by the administrative law judge was not supported by substantial evidence, that his assessment of her mental impairments failed to comply with Social Security Ruling 96-8p, that he should have found that she suffered from a severe impairment of anxiety, and that he failed to address the functional impairments related to her personality disorder. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 15, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

status requirements of the social Security Act (for purposes of SSD) through September 30, 2010, Finding 1, Record at 19; that she suffered from bipolar affective disorder and personality disorder, not otherwise specified, impairments that were severe but which, considered separately or together, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"). Findings 3-4, *id.* at 20; that she retained the RFC to perform a full range of work at all exertional levels but was limited to simple work and should not work with the public, Finding 5, *id.* at 21; that she could not perform any of her past relevant work, Finding 6, *id.* at 25; that, given her age (42 on the alleged date of onset of disability, August 15, 2007, a younger individual), high school education, work experience, and RFC, use of the Medical Vocational Rules in Appendix 2 to 20 C.F.R. Part 303, Subpart P (the "Grid") as a framework for decision-making led to the conclusion that there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id.* at 26; and that, therefore, she was not under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, February 17, 2012, Finding 11, *id.* at 27. The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Depuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process.  Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Anxiety and Panic Disorders

It is unclear whether the plaintiff means to assert that the administrative law judge should have found that she suffered from the additional severe impairments of one or more anxiety-related disorders, that her symptoms met Listing 12.06, or that, while her anxiety disorders did not meet the severity standard, the administrative law judge was nonetheless required to include impairments caused by her anxiety disorders in her RFC.  Amended Itemized Statement of

Errors Pursuant to Local Rule 16.3 ("Itemized Statement") (ECF No. 14) at 21-32.  I conclude, after rereading this portion of her itemized statement, that the plaintiff means to press only the latter argument, but I need not address the first in any event, as the plaintiff's third argument presumably discusses the limitations that she contends would result from a finding that either was a severe impairment.  I briefly address the second argument as follows.

Listing 12.06 deals with anxiety-related disorders.  The plaintiff quotes extensively from her treatment records, primarily from her own reports of symptoms to mental and physical health care providers, which she apparently contends that the administrative law judge should have addressed individually.  Itemized Statement at 22-25.  She then asserts that the administrative law judge "never discussed" the mental assessment performed by a state-agency psychologist, "failed to consider the effect" of certain limitations identified by a state-agency consultant who examined her, and "did not explain why he discounted or ignored the existence of any anxiety disorder[] and the functional limitations which would be expected" to flow therefrom.  *Id*. at 28.

However, the plaintiff makes no attempt to identify the evidence which she contends required the administrative law judge to find that she met all of the criteria of Listing 12.06.  Such a showing is necessary before a court can entertain the possibility of remand for consideration of the question of whether a particular claimant's impairment did in fact meet a Listing.  *Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *9 (D. Me. July 11, 2012).  Thus, to the extent that the plaintiff intends to argue that the administrative law judge should have found her mental impairments to meet or equal the criteria of Listing 12.06, that argument fails.[3]

---

[3] At oral argument, counsel for the commissioner conceded that the administrative law judge erred by failing to consider the plaintiff's mental impairments in light of the Listings.  He contended that this error was harmless, however, because the plaintiff has failed to demonstrate that the evidence compelled the administrative law judge to find that his mental impairment met any particular Listing.  For the reasons stated in the text, I agree.

An administrative law judge must include in the RFC assigned to a claimant any functional limitations caused by any impairment suffered by the claimant, even if that impairment is not severe. *See, e.g., Tolini v. Barnhart*, No. 05-230-P-S, 2006 WL 2827660, at *2 (D. Me. Sept. 29, 2006). Here, the administrative law judge acknowledged that the plaintiff's mental impairments cause moderate restrictions in her activities of daily living, moderate difficulties in social functioning, moderate difficulties with concentration, persistence, or pace, but no extended episodes of decompensation. Record at 20-21. The RFC included as mental limitations only limitations to simple work and not working with the public. *Id*. at 21.

As the administrative law judge noted, *id*., the areas of restriction (called the "B criteria") recited above are considered at Step 3 in the evaluation of Listing criteria; they do not constitute an RFC assessment. The plaintiff's extensive discussion of these factors, thus, is beside the point. Itemized Statement at 29-32. *See Dubriel v. Astrue*, Civil No. 08-406-B-W, 2009 WL 1938986, at *4 (D. Me. July 6, 2009). However, she also raises some specific criticisms, which I will now address.

First, the plaintiff asserts that the administrative law judge's failure to discuss the Psychiatric Review Technique Form ("PRTF") completed by a state-agency psychologist, Dr. Houston, standing alone, is reversible error. *Id*. at 25-26. She cites no authority for this proposition. An administrative law judge should address each expert opinion in the administrative record, including those of non-examining state-agency reviewers, and explain the weight given to each opinion*, see, e.g., Kelly v. Astrue*, Civil No. 09-78-B-W, 2009 WL 3152796, at *3 (D. Me. Sept. 28, 2009), but the failure to do so must be more than a harmless error in order to entitle the plaintiff to remand.

5

The plaintiff finds it significant that Dr. Houston "documented the following factors which evidenced Anxiety Disorder in Claimant: Generalized persistent anxiety accompanied by [all of] the following: Motor tension/Autonomic hyperactivity/Apprehensive expectation."[4] Itemized Statement at 26.  However, she says nothing about what changes in her RFC would necessarily have resulted, if the administrative law judge had addressed Dr. Houston's "documentation."  Dr. Houston found that this impairment did not meet or equal a Listing. Record at 477. The administrative law judge agreed with Dr. Houston's findings that the plaintiff was moderately limited in social functioning and in maintaining concentration, persistence, or pace, *id*. at 20-21, 475.  He found that the plaintiff's activities of daily living were moderately restricted, while Dr. Houston found that they were only mildly restricted.  *Id*. at 20, 475. Nothing in Dr. Houston's PRTF suggests how the plaintiff's RFC would necessarily have changed if the administrative law judge had shown that he considered it.

Next, the plaintiff contends that the administrative law judge "failed to consider the effect[s]" of three "limitations" noted by Edward Quinn, Ph.D., in his report of his consultative examination of the plaintiff.  Itemized Statement at 26-27.  She identifies these limitations as the following: "She may have difficulties with stressors. . . . She may have issues with emotional stability.  She has had a long history of problems in this area. . . . She may have some issues with reliability."  Record at 756.[5]  Dr. Quinn also said that the plaintiff should be able to follow work rules, be able to use appropriate gross judgment, be able to function independently, and be

---

[4] Dr. Houston merely checked off boxes for each of the three accompanying symptoms under the heading "Anxiety-Related Disorders."  Record at 470.

[5] As counsel for the commissioner pointed out at oral argument, Dr. Quinn's use of the word "may" in enumerating these limitations, considered together with his later statements concerning her continuing abilities, renders his opinion not inconsistent with the administrative law judge's conclusions regarding the plaintiff's mental impairments.  *Mills v. Apfel*, 244 F.3d 1, 7-8 (1st Cir. 2001).

able to complete job tasks and maintain personal appearance. *Id.* He also stated that he noted no difficulties with attention, concentration, persistence, pace, or memory. *Id.*[6]

The portion of the administrative law judge's RFC stating that the plaintiff should not work with the public does correspond to Dr. Quinn's conclusions that the plaintiff "may have difficulties interacting with others[]" and "may have difficulties in social settings." *Id*. at 21, 756. It is also noteworthy that Dr. Quinn assigned the plaintiff a Global Assessment of Functioning ("GAF") score of 50 to 60, *id*. at 757, which represents moderate symptoms (like flat affect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflict with peers or co-workers.) *Nickerson v. Astrue*, No. 1:11-cv-87-GZS, 2012 WL 975641, at *3 & n.3 (D. Me. Mar. 21, 2012). It is consistent with a finding that a claimant is not disabled. *Id.* More important is the fact that the plaintiff identifies no disabling limitations that necessarily follow from those of Dr. Quinn's findings that she highlights. Therefore, she is not entitled to remand on this basis.

The plaintiff moves on to a document that she characterizes as a PRTF "made out" by "Dr. Haskell [Exh 9A], a non-examining Agency consultant," Itemized Statement at 28, who "found" moderate limitations in the same areas as those adopted by the administrative law judge. Exhibit 9A, which is filed under the heading "Payment Documents and Decisions" in the administrative record, is entitled "Disability Determination Explanation" with a subheading of "Claimant Information." Record at 126. Under the further subheading "Medically Determinable Impairments and Severity," an electronic signature of "Leigh Haskell PhD" appears on a one-

---

[6] The administrative law judge gave "great weight" to Dr. Quinn's opinions. Record at 25. This is an expert opinion inconsistent with that of Dr. Houston, who noted moderate difficulties in this area, albeit some three years earlier. Any implied rejection of Dr. Houston's opinion in this regard is thus supported by more recent medical evidence of record.

page document that apparently is designed to rate the severity of alleged mental impairments. *Id.* at 132.

This document lists affective disorders and personality disorders as severe impairments of the plaintiff and is clearly designed to deal only with the Step 2 and Step 3 analyses of a claimant's impairments. It does list the first three of the four "Part B" criteria as moderate, as the plaintiff notes. Itemized Statement at 29. However, again, as was the case with the plaintiff's discussion of Dr. Houston's findings, she offers no specific limitations that would necessarily result from these findings, the presence of which would compel a more limited RFC and a different outcome for her application. Her speculation that "[s]even (7) moderate impairments such as those listed above are clearly likely to have various adverse effects, and cannot simply be ignored[]," *id.* at 30, is not enough to entitle her to relief.

On the showing made, the administrative law judge's failure to discuss each of the moderate limitations found by each of the psychologists who opined on Step 2 and Step 3 issues and his reasons for not translating them into concrete limitations affecting the plaintiff's ability to work beyond the two limitations included in the RFC that he assigned to the plaintiff is harmless error, at most.

### B. Physical Limitations

The plaintiff argues that the administrative law judge was not entitled to rely on the report of Dr. Trumbull, a state-agency reviewing physician, and to reject that of Dr. Phelps, who performed a consultative examination at the request of the state agency. Itemized Statement at 3-12. The administrative law judge provided the following analysis of the plaintiff's claimed physical limitations:

> As for the opinion evidence, the undersigned gave little weight to the opinion of Dr. Phelps at Ex. 18F that the claimant was restricted to light

>   exertional work. As discussed above, his examination was almost completely normal except for mild Phalen's signs at the wrists. He appeared to have relied on the claimant's subjective complaints in determining she was limited to light work (Ex. 18F). The undersigned does not find the claimant credible about her complaints and would not limit the claimant based solely on these complaints. In addition, no other treating or examining physician has found such limitations, which are not supported[] in the medical record. See SSR 06-03p.
>
>   Instead, the undersigned gives great weight to the opinion of Dr. Trumbull who reviewed the medical evidence and determined the claimant had no exertional or non-exertional limitations. Dr. Trumbull noted the claimant is in the class II obesity category with a BMI of 37.4 but also noted there were no physical impairments associated with the obesity (Ex. 9A pg. 9). This opinion is consistent with the medical evidence and is not controverted by any treating physician opinion to the contrary. Dr. Trumbull is familiar with Social Security rules and regulations and his opinion is entitled to great weight pursuant to SSR 06-03p.

Record at 24-25.

The court needs to devote little additional time and effort to this issue, because one of the three jobs identified by the vocational expert in response to the administrative law judge's hypothetical question, *id*. at 67-68, and upon which he relied in his opinion, *id*. at 26, is classified at the light exertional level. That exertional level is consistent with Dr. Phelps's conclusions. That job, cleaner, as described in the Dictionary of Occupational Titles, is also consistent with all of Dr. Phelps's limitations, with the exception of occasional stooping, kneeling, and crouching, which Dr. Phelps excluded entirely. *Compare* Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) § 323.687-014 *with* Record at 771.

Dr. Phelps stated that the postural limitations he imposed were based on a history of leg, knee, and ankle pain "with an unremarkable knee examination," difficulty sleeping "with impaired alertness," and obesity. Record at 771. Because his physical examination that day was unremarkable, he could only have based these restrictions on the plaintiff's subjective

9

complaints.[7]  The administrative law judge's statement that Dr. Phelps "appeared to have relied on the claimant's subjective complaints" is supported by Dr. Phelps's report.

The plaintiff's conclusory assertion that "there is no evidence" that Dr. Phelps relied on her subjective complaints, Itemized Statement at 6, her only mention of the administrative law judge's second stated reason for rejecting some of Dr. Phelps's conclusions, is incorrect.

The plaintiff prefers to rely on a report by Dr. Phelps of his consultative examination of the plaintiff in 2008, in connection with an earlier application for benefits.  *Id*. at 3, 8-10.  That report includes some findings more favorable to the plaintiff than does his 2011 report, but his conclusions concerning her physical limitations are almost identical.  *Id*. at 9.  The comparison between those limitations and the demands of the cleaner job remains the same no matter which report is consulted.

I do not find the three minor inconsistencies between Dr. Phelps's limitations and the DOT description to be sufficient to entitle the plaintiff to remand on this basis.

## C.  Limitations Related to Mental Impairments

The plaintiff contends that the administrative law judge "failed to consider all of the functional limitations related to [her] affective and personality disorders," entitling her to remand.  *Id*. at 12-21.  Specifically, she faults the administrative law judge for failing "to assess her RFC on a function-by-function basis."  *Id*. at 13.  She asserts that the administrative law judge failed to consider how her mental limitations affect her ability to (1) perform activities within a schedule, maintain regular attendance, and be punctual, (2) work in coordination with or in proximity to others, and (3) complete a normal workday and week without interruptions from psychologically-based symptoms.  *Id*. at 15.  This failure, she argues, entitles her to remand.

---

[7] There is no obvious connection between "impaired alertness", Record at 772, and the ability to stoop, kneel, or crouch.

The plaintiff cites Social Security Ruling 96-8p in support of this argument. That Ruling requires an adjudicator to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." Social Security Ruling 96-8-, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2012) at 143. It does not require assessment of the particular factors set forth in the plaintiff's itemized statement. Instead, those regulatory subparagraphs, where they are relevant to mental impairments, require, in relevant part, that

> [w]hen we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c); 416.945(c).

In this case, the administrative law judge addressed this issue as follows:

> In sum, the above residual functional capacity assessment is supported by the claimant's activities of daily living, her relative stability despite the lack of consistent psychological treatment and her ability to persevere without requiring hospitalization despite being homeless for much of the relevant period. The basic mental activities generally required by competitive, remunerative unskilled work [are] understand[ing], remembering and carrying out simple instructions, making simple work related decisions, responding appropriately to coworkers and supervisors, and usual work situations, and dealing with changes in the routine work setting. See SSR 85-15. Despite her impairments, the claimant retains the ability to perform competitive, unskilled work.

Record at 25.

In addition, the administrative law judge gave "great weight" to the opinions of Drs. Quinn and Haskell. *Id*. He noted that Dr. Quinn "determined the claimant was capable of work activities but might have difficulty interacting with others. . . . He noted she should be able to complete job tasks . . . but that she might have some difficulty with reliability." *Id*. As to Dr. Haskell, the administrative law judge noted that he "determined the claimant would be capable of at least simple work, not with the public." *Id*. The RFC includes a limitation to simple work and a prohibition of work with the public. *Id*. at 21. This is sufficient to meet the requirements of the regulation and SSR 96-8p.[8]

The plaintiff also attacks the administrative law judge's treatment of her credibility in this regard, but not as a separate issue. Itemized Statement at 16-21. "The credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987).

The administrative law judge addressed the plaintiff's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant left her last job, not because of her impairments but to care for her grandfather who was ill. Of note, the claimant failed to show for her scheduled consultative examination with Dr. Stockwell which reflects poorly on her credibility about the severity of her impairments. In addition, the claimant told Essie Leach, PA-C that she never had problems with

---

[8] I note that Dr. Quinn also found that the plaintiff "should be able to follow work rules . . . be able to use appropriate gross judgment . . . be able to function independently . . . able to complete job tasks." Record at 756. He also said that "[d]ifficulties with attention, concentration, persistence, pace and memory were not noted." *Id*. These findings address the concerns that the plaintiff contends were not addressed by the administrative law judge, and in a manner consistent with the administrative law judge's conclusions.

> alcohol abuse in the past. However, the claimant did have at least two operating under the influence charges and spent some time in jail for one of the charges. Similarly, at her February 2010 intake with Ms. Leach, the claimant demonstrated drug-seeking behavior. She was already taking a large dose of Klonopin prescribed by her family physician. However, she reported her son stole her Klonopin and she wanted Xanax. Ms. Leach noted the claimant was already tolerant to the Klonopin, which the claimant was taking in high doses and according to the claimant "was not touching her anxiety." Several months later, she reported her moods were high and she was self-medicating with marijuana.
>
> In addition, the claimant self-directs her medication usage. In August 2011, she reported having discontinued her prescribed clonidine and Trazodone prescribed for sleep and anxiety. Instead, she was smoking more marijuana and continuing with her two pack/day cigarette habit. In addition, instead of tapering off her Klonopin as directed, she stopped it "cold turkey." The claimant's self-directed medical program and her significant lapses in treatment have prevented her from getting the regular, consistent care[] which is needed to treat her personality disorder. She continues to use marijuana against medical advice and this appears to be more of a priority for her limited resources than achieving stability or getting regular treatment.

Record at 24 (citations omitted).

  The plaintiff asserts that there are only three "credibility or reliability considerations" mentioned by the administrative law judge and that all are incorrect. Itemized Statement at 17-18. However, the three "considerations" listed by the plaintiff all have to do with the testimony of the plaintiff's case manager, Michelle Gagnon, and her credibility. Record at 25. Gagnon's testimony, even if fully credited, would not entitle the plaintiff to a remand given the other record evidence.

  When the plaintiff does reach the issue of her own credibility, she attacks some of the reasons given by the administrative law judge in the passage quoted above. Itemized Statement at 20-21. Without any citation to authority, she begins by asserting that missing a consultative examination "is not a reasonable basis for discrediting a claimant . . . especially where she

13

alleges difficulties with memory[.]" *Id*. at 20.[9] She adds that "there is no logical nexus between one's missing a [consultative examination] and one's credibility." *Id.* To the contrary, missed appointments do provide grounds for discounting credibility. *E.g., Genson v. Astrue*, No. 11-CV-227-PJC, 2012 WL 3427369, at *11 (N.D. Okla. Aug. 14, 2012); *Maginnis v. Astrue*, Civil Action No. 5:11-CV-36, 2012 WL 2046883, at *9 (D. Vt. Mar. 14, 2012) (and cases cited therein); *Holstine v. Astrue*, No. EDCV 10-0721 AGR, 2011 WL 3425597, at *6 (C.D. Cal. Aug. 5, 2011).

The plaintiff's second alleged error asserts that the administrative law judge "mis-reads and misconstrues" the information she provided during her initial evaluation by Essie Leach. Itemized Statement at 20-21. She cannot dispute that Ms. Leach's record states: "She reports she never had a problem with alcohol[,]" Record at 791, but contends that the immediately following phrase – "[H]owever, she has received an OUI and has had to serve jail time for it[.]", *id.* – "cannot reasonably be taken to mean that Claimant was claiming to Ms. Leach that she had never used or abused alcohol." Itemized Statement at 21. But, that is not how the administrative law judge characterized the entry. He says that the plaintiff "told Essie Leach, PA-C that she had never had problems with alcohol abuse in the past." Record at 24. That statement could as easily be interpreted as suggesting that the plaintiff's concept of a "problem" was itself a problem, as suggesting that she had lied. Either interpretation provides a basis for questioning the plaintiff's credibility,

Finally, the plaintiff asserts in conclusory fashion that "displaying drug seeking behavior, in a person with a history of polysubstance abuse, is not *per se* a basis to discredit that person's credibility, especially where, as here, there is no [drug or alcohol abuse] issue." Itemized

---

[9] The plaintiff offers no citation to the record to support her assertion that she rescheduled and attended the appointment, or that "she alleges difficulties with memory, task follow through, and social isolation and agoraphobia." Itemized Statement at 20.

Statement at 21. Social Security case law is to the contrary. *See, e.g., Cutler v. Astrue*, No. EDCV 12-516 AGR, 2013 WL 440697, at *4 (C.D. Cal. Feb. 5, 2013); *McDonald v. Astrue*, No. 1:12CV 42 JCH(LMB), 2013 WL 410230, at * 11 (E.D. Mo. Jan. 14, 2013); *Sneatlum v. Astrue*, No. C12-715-RSL-JPD, 2013 WL 328141, at * 4 (W.D. Wash. Jan. 4, 2013); *Sears v. Astrue*, Civil Action No. 2:11-CV-138, 2012 WL 1758843, at *5 (D. Vt. May 15, 2012) (citing cases).

The plaintiff takes nothing by these arguments.

### D. Personality Disorder

The plaintiff's final stated issue focuses on the severe impairment of a personality disorder found by the administrative law judge. She asserts that "it was error for the ALJ to assess limitations under 12.08, personality disorder[,] without addressing the effects of her personality disorder, as differentiated from her affective disorder." Itemized Statement at 33. Again, she cites no authority for this position.

The plaintiff's specific argument appears to be that she is entitled to remand because the administrative law judge did not "specify his finding in the "A" criteria" for the Listing for each of these mental impairments. *Id*. at 33-35. She goes on to assert that "[w]hichever one or more aspects of Personality Disorder [under Listing 12.08] are deeply ingrained in Claimant, her ability to engage in work activities would clearly be impacted." *Id*. at 35. That is precisely why the administrative law judge found the plaintiff's personality disorder to be a severe impairment, and is the only purpose served by the "A" criteria in the Listing in this case, where the plaintiff's personality disorder was found not to meet all of the necessary criteria of the Listing.

The plaintiff writes about "the functional limitations which would attach to any person exhibiting such a deeply ingrained, maladaptive pattern of behavior," *id.*, but that is not how the Social Security benefit system works. It is not based upon functional limitations that any lay

15

person would expect a claimant to exhibit based upon common knowledge, but rather upon medical evidence present in the record. The limitations experienced by any claimant are unique to that claimant, and not assumed based upon his or her diagnosis. The plaintiff cites no medical evidence in the record finding that she suffered from any particular functional limitation due only to her personality disorder. If the administrative law judge were to find that the personality disorder caused specific functional limitations in the absence of such evidence, he would be interpreting raw medical data, which he is forbidden to do. *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).

The plaintiff argues that the administrative law judge was required to explain why he did or did not find that each of the "behavior patterns" listed under personality disorder in the Diagnostic and Statistical Manual ("DSM-IV") is present in this case, or, in the alternative, why the presence of each did not affect the plaintiff's ability to work. *Id*. at 35-36. There is no such statutory, regulatory, or case law requirement. Indeed, the DSM-IV is not created by the Social Security Administration nor any other agency of the federal government. Again, the plaintiff cites no authority in support of this argument. There is authority to the contrary. *E.g., Sherrod v. Astrue*, No. 10-C-0451, 2011 WL 284349, at *10 (E.D. Wis. Jan. 25, 2011).

The plaintiff is not entitled to remand on the basis of this argument.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum,*

*within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 26th day of April, 2013.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
